UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**JAMES ISAAC DAVIS**                                                                           **PLAINTIFF**

**v.**                                   **CIVIL ACTION NO. 1:15-CV-P115-GNS**

**BOWLING GREEN DETENTION CTR. MED'L STAFF et al.**        **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, James Isaac Davis, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the complaint will be dismissed.

### I. SUMMARY OF CLAIMS

Plaintiff, a convicted inmate, lists as Defendants in the caption of his complaint the Bowling Green Detention Center Medical Staff, the Bowling Green Detention Center, and Lieutenant Laura.[1] He states that at the end of November he began having "real bad pains above my right ankle." According to the complaint, he submitted a medical slip regarding the pain, which specifically stated that he believed he had a blood clot. A nurse saw him about two days later and told him he did not think it could be a blood clot because there was no heat, discoloration, or swelling. The nurse wrote a prescription for three days' worth of ibuprofen.

For three days while taking the ibuprofen, the pain in Plaintiff's leg was better, but after the three days were over the pain returned although it had moved from the ankle to the back of his calf. Consequently, Plaintiff put in a second medical slip. A nurse saw him about two days later and stated that it was probably a pulled muscle or cramp and wrote a three-day prescription

---

[1] Later in the form, he lists Jailer Jackie Strode as a Defendant as well.

for ibuprofen. Once again, while taking the ibuprofen, the pain was not too bad, but came back after Plaintiff stopped taking the ibuprofen.

At that point, Plaintiff told the nurse that he could not handle the pain anymore and he needed to see a doctor. He states that the nurse put in a request for him to see the doctor. He waited for almost a week and a half without seeing the doctor, at which point he filed a grievance against the medical staff for not "'properly treating me'" and for "'medical negligence.'" After he put in a fourth medical slip, the doctor ordered an ultrasound, which was done the next day. A nurse told him afterwards that he did have a blood clot and that he needed to lie down and take something besides ibuprofen because ibuprofen should not be taken for a blood clot. Plaintiff states, "That night they moved me to a medical pod to be under observation."

Plaintiff states that while "all this [was] going on about [his] leg [and] they knew I couldn't walk" but before he was moved to the medical pod, Lieutenant Laura told him that he needed to be a trustee; that he had to hand out food trays to the federal inmates; and, that if he refused, she would "put me in the hole and then move me back to the county side of the Jail." He states that this is why he has named Lieutenant Laura as a Defendant. He states that he worked because he did not want to be retaliated against.

Plaintiff states that five days after he was moved to the medical pod he was transferred to the Fulton County Detention Center and a doctor had him taken to the hospital "ASAP," where he was put on a blood thinner. He states, "I feel that if Bowling Green Jailer Jackie Strode had his medical staff properly trained then I would have got the help I needed. I also feel that if he properly had his officers trained then luetenant Laura wouldn't have forced me to work with these medical problems." Plaintiff asks for monetary and punitive damages and injunctive relief in the form of proper training for Defendant Laura and medical staff.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### *Eighth Amendment claim*

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective

component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In other words, a court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Thus, a difference in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). The subjective component of the Eighth Amendment analysis "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013).

Here, Plaintiff only evidences a disagreement with his medical care. After he filed his first medical slip, a nurse evaluated him for a blood clot and determined that he did not have one because there was no heat, discoloration, or swelling. However, the nurse did prescribe ibuprofen for the pain. After Plaintiff filed his second medical slip, he was again seen by a nurse who diagnosed a probable pulled muscle or cramp and prescribed ibuprofen for the pain. Although there was some delay of a week and a half or more after he requested to see a doctor, a doctor prescribed an ultrasound, which showed a blood clot. At that point, Plaintiff was moved to the medical pod, where he remained for five days until his transfer. Thus, Plaintiff was seen and evaluated by a nurse two times, prescribed ibuprofen twice, and given an ultrasound, after which he was moved to the medical pod where it appears he was not required to work. The fact

that Plaintiff ultimately was proven right that he did have a blood clot which required blood thinners to treat does not negate the fact that he received medical attention by Defendants. As such, he has failed to state a deliberate-indifference claim related to his treatment for a blood clot. *See, e.g.*, *Jennings v. Al-Dabagh*, 97 F. App'x 548, 550 (6th Cir. 2004) ("[Prisoner's] personal opinion that his care was substandard . . . raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to [prisoner's] serious medical needs."); *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996) (holding that where the fact that prisoner's arm was broken was not readily apparent as it was not swollen and prisoner did receive medical attention in the form of sutures for a cut above his arm and an examination of his arm, prisoner's complaints go to the adequacy of medical care and "did not raise an issue of unnecessary and wanton infliction of pain as required under *Estelle*").

### *Retaliation claim*

Plaintiff alleges that Lieutenant Laura forced him to work handing out food trays or face being put in the "hole" and moved to the county side of the jail. Plaintiff alleges that she did so even though "they knew I couldn't walk." However, he also alleges that this occurred before he was moved to the medical pod.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

5

Although Plaintiff states that he filed a grievance, which would be protected conduct for purposes of a retaliation claim, the allegations in his complaint establish that the threatened actions of being put in the "hole" and moved to the county side of the jail were threats that would come to fruition if Plaintiff refused to work and not because he had filed a grievance. Lieutenant Laura's requirement that he work or face the "hole" and transfer only occurred before the ultrasound showed that Plaintiff had a blood clot. In other words, although it appears that Plaintiff had a blood clot all along which had been misdiagnosed as a pulled muscle or cramp, when Lieutenant Laura required him to work she did so before he was diagnosed with a blood clot by a medical professional.

"[I]nmates do not have a constitutional right to refuse to work and refusing to work is not the exercise of a specific constitutional right and cannot form the basis for a retaliation claim." *Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009) (per curiam). Because, Plaintiff only has connected the threatened action of being put in the "hole" and transferred to Lieutenant Laura's requirement that he work, he has failed to state a retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's complaint by separate Order.

Date: May 2, 2016

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
4416.009

6